Rougtell v. Strode.

————————

ROUGTELL, Administrator of KINSKY et al., Respondent, v. STRODE, Public Administrator, Appellant.

St. Louis Court of Appeals, June 11, 1907.

1. **HUSBAND AND WIFE: Marriage Contract: Dower in Personal Property.** The provision of section 111 Revised Statutes of 1899, putting a widower on the same footing as a widow in respect to dower in personal property, is inoperative in respect to property covered by a marriage contract executed prior to the passage of the act.

2. **————: Trusts: Administrator De Son Tort.** Where a marriage contract provided that property of the wife should remain her separate property, and on her death her surviving husband took possession of and controlled such property, he was a trustee for her heirs, and administrator *de son tort* of her property.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

*Johnson, Houts, Marlatt & Hawes* and *E. W. Banister* for appellant.

The marriage contract between Mr. and Mrs. Kinsky was no bar to Mr. Kinsky's claiming and taking possession of the personal effects which the court found he did take possession of; under the provisions of sections 105, 106, 107 and 111, Revised Statutes 1899, he had a right to these personal effects of his wife upon her death, and the marriage contract did not bar that right. R. S. 1899, secs. 105, 106, 107, 111; Mowser v. Mowser, 87 Mo. 437; Farris v. Coleman, 103 Mo. 352; Coulter v. Lyda, 102 Mo. App. 411; King v. King, 184 Mo. 99.

*M. McKeag* for respondents.

The deceased occupied the position towards this property of administrator *de son tort* and trustee. The property of all deceased persons is trust property. Logan v. Philips, 18 Mo. 23; Rieper v. Rieper, 79 Mo. 352; Rodgers v. Bank, 69 Mo. 560.

BLAND, P. J.—George J. Kinsky and Mary Louise Baumgartner were married in May, 1870. A few days before their marriage they executed the following antenuptial contract:

"Whereas a promise of marriage exists between the undersigned, George J. Kinsky and Mary Louise Baumgartner, and which soon is to be solemnized: Now, therefore this agreement, made and entered into by and between the said George J. Kinsky, of the one part and the said Mary Louise Baumgartner, of the other part, both of adult age, and residents of the city and county of St. Louis, in the State of Missouri, witnesseth: That,

for and in consideration of the love and affection by
each for the other entertained, and for and in consider-
ation of the sum of one dollar by each to the other paid,
and the receipt whereof is by them respectively acknowl-
edged, the said parties have covenanted and agreed as
follows: · That the said Mary Louise, notwithstanding
said intended marriage, shall of the property, real, per-
sonal and mixed, whereof she is now entitled, as well as
of that she may hereafter by gift, grant, demise, pur-
chase or otherwise become entitled, or which she may
acquire, have the use, enjoyment, possession, control
and disposition, for herself solely; and that the said
Kinsky have no estate, claim, interest or domain therein,
nor that the same be in any manner subject to the claims
or demands of any creditors he may now have or may
hereafter have; with full power to the said Mary Louise
to collect and to receive the rents, issues, profits and
proceeds of said property on her own individual receipt,
and with power to sell, lease, incumber by deed of trust
or otherwise, or other disposition make of said prop-
erty by her own separate act and deed; and that the
proceeds thereof to re-invest for her own sole and sepa-
rate use and benefit, and with power to the said Mary
Louise to appoint trustee or trustees, and those again
to revoke, and others again to appoint in place of such
original trustees, and this power of revocation and ap-
pointment to be exercised by said Mary Louise so often,
as often as may be her pleasure; with power also that
the said Mary Louise may by writing, in the nature of
a last will and testament, devise and bequeath all prop-
erty of whatsoever nature, whereof she may be seized,
entitled or possessed, to such person or persons, in such
share or shares and with such limitations, reservations
and conditions as she shall deem proper; it being the
intent and meaning of these presents that the said Mary
Louise, notwithstanding her said marriage, shall have,
hold occupy and enjoy her property the same as if she

was a *femme sole,* and the power necessary to carry out
this intention, though not herein specifically set forth,
are and shall be considered as included herein. And
the said Kinsky covenants to and with said Mary Lou-
ise that, for the fulfillment of this contract, he will, at
all times and whenever required, sign, seal, execute
and deliver all necessary instruments, sealed or unseal-
ed, acknowledging the same, if necessary before of-
ficers thereto authorized, and according to all the forms
of the law.

"In witness whereof, the said parties of the first
part have hereunto set their hands and affixed their
respective seals, on this, the twelfth day of May, in the
year of our Lord eighteen hundred and seventy.

"GEORGE J. KINSKY,            (Seal)
"MARY L. BAUMGARTNER.        (Seal)"

They lived together as husband and wife until
March 12, 1902, when Mary Louise died intestate. No
children were born of the marriage. Plaintiff Juliet M.
Truer (nee Baumgartner) and Charles F. Baumgartner,
niece and nephew of Mrs. Kinsky, are her only heirs
at law. May 12, 1904, letters of administration on the
estate of Mrs. Kinsky were first granted to Juliet M.
Baumgartner; on her marriage to R. L. Truer, her let-
ters were revoked and plaintiff Rougtell appointed ad-
ministrator *de bonis non* of the estate. George L. Kin-
sky died intestate in March, 1904, and defendant, pub-
lic administrator of the city of St. Louis, took charge
of and proceeded to administer upon his estate. On
April 15, 1892, John C. Newberry and wife conveyed to
Mary L. Kinsky the eastern five feet of lot No. 39, and
thirty feet of lot 40, of Lewis & Marshall's subdivision
of city block No. 4553, south of the city of St. Louis,
for a consideration of $6,650. On May 29, 1899, Mary
L. Kinsky and her husband executed a deed of trust on
the property to Edward K. Love, trustee, to secure a
principal note of $2,800, due in three years, and semian-

nual interest notes. On December 22, 1902, nine months and ten days after the death of Mrs. Kinsky, Love as trustee, foreclosed the deed of trust by public sale; at which sale G. H. Dudley, representing the holder of the notes, became the purchaser at $3,143. On January 16, 1903, Dudley conveyed the property by quitclaim deed to George J. Kinsky; consideration expressed in the deed, one dollar. On January twenty-second Kinsky conveyed the property to E. K. Love, trustee, for the benefit of G. H. Dudley, to secure the payment of a principal note of $4,000, due in three years, and semiannual interest notes. On October 10, 1903, Kinsky executed a second deed of trust to E. K. Love, trustee to secure a principal note of $500, due in one year, and two semiannual interest notes. On April 22, 1905, the property was sold by E. K. Love, trustee, at public sale, at which sale F. S. Slupsky was the purchaser at $5,565. After discharging the $4,000 and $500 deeds of trust and paying the expenses of the sale, there remained $599.59 of the purchase price, which Love, the trustee, paid defendant as administrator of George J. Kinsky's estate. After the death of his wife, Kinsky retained possession of the property and occupied the same in person, or by tenant, until his death. But there is no evidence to show what amount of rent, if any, he collected. Defendant admitted in his answer that he had collected rents, and after paying for repairs, taxes, etc., had in his hands the net sum of $345.22. In the lifetime of Mrs. Kinsky, the Pennsylvania Fire Insurance Company issued a fire policy to her on her personal property for $1,500. On the face of this policy is the following indorsement:

"St. Louis, 8-30-02.

"Owing to the death of Mrs. Mary Louise Kinsky, this policy shall hereafter cover in the name and for account of George J. Kinsky and ceases to cover as heretofore.   "J. E. LAWTON & SON."

Defandant realized the sum of $300 from the sale of property inventoried by him as the personal property of George Kinsky. There is no definite or satisfactory evidence of the amount of personal property possessed by Mary L. Kinsky at the time of her death; but it is fair to assume that all the property covered by the insurance policy issued to her by the Pennsylvania Fire Insurance Company was her separate property, and it is shown by the indorsement on the face of the policy that George Kinsky took possession of said property and claimed it as his own, after the death of his wife.

The suit is in equity and proceeds upon the theory that George Kinsky, after the death of his wife, by taking and retaining possession and control of her property, both personal and real, became a trustee as to such property for the benefit of her heirs at law, and that defendant, as administrator of Kinsky's estate, should stand charged with the trust for the benefit of said heirs. It is also alleged that the sale of the real estate to Kinsky was fraudulent. The learned trial judge found that George Kinsky acquired no right or title to the real estate of his deceased wife by the conveyance noted above, and that the net proceeds arising from the sales under the deeds of trust given by him, and the rents collected by defendant, as his administrator, were a trust fund held by defendant for the benefit of plaintiffs. The court also found that defendant held $100.20, arising from the sale of personal property inventoried as the property of George J. Kinsky, in trust for plaintiffs, and awarded judgment in gross for $1,025.19 in plaintiff's favor.

1. In respect to the personal property, defendant contends that notwithstanding the contract in contemplation of marriage, George Kinsky was entitled to at least $300 as personal dower under the provisions of sections 105, 106, 107, and 111, Revised Statutes 1899. Section 111, which puts the widower on the same footing

126 App—23

as the widow in respect to dower in personal property, was passed in 1895. The marriage contract was entered into in 1870. The statute has no retrospective operation and does not in the least affect the marriage contract. [Leete v. Bank of St. Louis, 141 Mo. 574.]

2. Dudley and Love both testified, positively and unequivocally, that there was no agreement, prior to or at the time of the sale under the $2,800 deed of trust, that the property should or would be conveyed to George J. Kinsky; nor any arrangement or agreement whatever made with him whereby he should acquire the fee in the property; that several days after the sale, at the request of Kinsky, Dudley took the matter up with Davis (for whom he had bid in the property) and Davis said all he wanted was the money he had invested in the property; that it was then arranged to let Kinsky have it at $4,000, the sum required to pay Davis and to clear the property of back taxes. On this evidence the allegation of fraud in the petition, in respect to the transfer of the property from Dudley to George Kinsky, is disproved and for this reason defendant insists that so much of the judgment as awards the proceeds of the real estate to plaintiff should be reversed. There is another view of the case to be considered. By taking possession of and assuming control of his wife's entire estate at her death, George Kinsky assumed the attitude of a trustee for the heirs of his wife, especially is this so in view of the fact that her heirs were minors at the time; having assumed this position, he could not relieve himself of his duties as trustee without first turning the property over to the proper representative or representatives of his deceased wife. He should have had himself or another appointed administrator of her estate; instead of this he put himself in the attitude of administrator *de son tort* of the estate and continued in that attitude down to the day of his death. He must therefore be deemed to have dealt with the property as trustee for the heirs

of his wife, and any profits which he or his administrator made thereon, or therein, belong not to him or his estate, but to the heirs of Mary Louise Kinsky.

The judgment is affirmed. All concur.